FILED
IN CLERK'S OFFICE
US DISTRICT COURT
E.D.N.Y.
* AUGUST 23, 2023 *
BROOKLYN OFFICE

HDM:KTF/GN
F. #2017R02234

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

HORST JICHA,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. 23-CR-342 _____
(T. 15, U.S.C., §§ 78j(b) and 78ff;
T. 18, U.S.C., §§ 371, 981(a)(1)(C),
982(a)(1), 982(b)(1), 1349, 1956(h), 2
and 3551 et seq.; T. 21, U.S.C., § 853(p);
T. 28, U.S.C., § 2461(c))

Judge Orelia E. Merchant
Magistrate Judge Marcia M. Henry

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    Relevant Terms and Definitions

      1.    The term "digital asset" generally referred to an asset that was issued and transferred using a distributed ledger or blockchain technology, including so-called "cryptocurrencies," "coins" and "digital tokens."

      2.    A "cryptocurrency" or "virtual currency" was a currency circulated over the Internet as a form of value. Virtual currencies were not issued by any government, bank or company, but were controlled through computer software operating via cryptographic technology and a large, decentralized, peer-to-peer network. Cryptocurrency networks maintained ledgers, which tracked the amount of each cryptocurrency held by any given user. Within a network, users could conduct cryptocurrency transactions amongst themselves in a secure, traceable manner.

3.      A "digital token" was a digital asset that, unlike a cryptocurrency, did not have its own network, but could be used on other cryptocurrency networks to buy virtual goods or services.   Digital tokens were usually created, distributed, sold and circulated through the initial coin offering process.

4.      An "initial coin offering" ("ICO") was a way for companies that developed and maintained digital assets to raise funds.   In an ICO, a company would sell interested investors a new digital token in exchange for funds to grow the company.   ICOs were usually marketed to investors using a "technical whitepaper," which was a document that included a detailed description of the cryptocurrency product, the product's technical solution, how the product would be developed and details on the sale of the token.

5.      A "cryptocurrency wallet," also known as a "digital wallet," was an application that allowed cryptocurrency users to store and retrieve their digital assets.   Digital wallets could hold multiple cryptocurrencies.   Each digital wallet had a unique cryptographic address, which was used to facilitate transactions.

6.      "Mining" was a process by which individuals on cryptocurrency networks could help authenticate cryptocurrency transactions.   In exchange for authenticating transactions, an individual could earn newly created cryptocurrency.   Only certain cryptocurrencies had the ability to be mined.

7.      "Bitcoin," or "BTC," was one form of cryptocurrency.   It was created in or about 2009 and was the world's largest cryptocurrency by market capitalization.   Bitcoin was a cryptocurrency that could be mined.

8.      "Ether," or "ETH," was another form of cryptocurrency.

9.      "Multilevel marketing" referred to a sales strategy in which distributors promoted and sold a product or service to other individuals and recruited new distributors into the business.  Distributors were paid a percentage of their recruits' sales.  New recruits became part of the distributor's network, also referred to as the distributor's "downline," and were, in turn, encouraged to make sales to earn money.

10.      A "Ponzi scheme" was a fraudulent investment scheme that paid existing investors with funds collected from new investors.

II.      Relevant Entities and Individuals

11.      The defendant HORST JICHA was a founder and the Chief Executive Officer ("CEO") of USI-Tech.  JICHA was a German citizen who resided in Brazil and Spain.

12.      USI-Tech was a company that claimed to make cryptocurrency mining and trading accessible to the average retail investor through its online platform.  It purported to be incorporated in the United Arab Emirates.  "USI" was purportedly shorthand for "United Software Intelligence."  USI-Tech employed a multilevel marketing sales strategy to recruit new investors, and falsely guaranteed returns on investment.  USI-Tech's online platform was located at the domain www.usitech-int.com (the "Website").  USI-Tech purported to shut down in or about March 2018, after which American investors were unable to withdraw any money.  After USI-Tech purported to shut down, much of the missing money—approximately 1,774 Bitcoin and 28,589.42 Ether (collectively worth approximately $94,000,000 as of the date of this Indictment)—was transferred to a cryptocurrency exchange deposit address controlled by the defendant HORST JICHA.

13.      Co-Conspirator 1 ("CC-1") and Co-Conspirator 2 ("CC-2"), individuals whose identities are known to the Grand Jury, were executives of USI-Tech.

14.     Individual 1, an individual whose identity is known to the Grand Jury, was an American USI-Tech distributor who made numerous in-person and online presentations promoting USI-Tech alongside the defendant HORST JICHA.

III.    The Fraudulent Scheme

A.     Background about USI-Tech

15.     USI-Tech started overseas as a multilevel marketing company that purported to sell foreign exchange trading software that included a proprietary trading algorithm. Beginning in or about early 2017, USI-Tech pivoted its focus to cryptocurrency mining and trading, and continued applying a multilevel marketing strategy to its sales of cryptocurrency mining and trading investment products.

16.     USI-Tech claimed, on the Website and in social media postings, that investors and potential investors could make money in two ways: (1) by purchasing "BTC Packages," each of which cost €50 (approximately $55 to $60 at the time), which was paid in Bitcoin and was purportedly invested in USI-Tech's Bitcoin mining and trading operations, and (2) by earning commissions for referring others to buy products from USI-Tech.   Beyond these basic statements, there was very little publicly available information about USI-Tech on its Website.   For example, there was no information listed on the Website about who ran USI-Tech, where it was located, or the technology behind the purported automated trading or mining.

B.     Promotion in the United States

17.     Beginning in or about the Spring of 2017, the defendant HORST JICHA and his co-conspirators began aggressively promoting USI-Tech in the United States.   JICHA and his co-conspirators promoted USI-Tech both online and through in-person presentations that

took place in the United States and targeted U.S. investors, including investors located in the Eastern District of New York.

i.     False Promises of Guaranteed Returns

18.     While promoting USI-Tech online and in person throughout the United States, the defendant HORST JICHA falsely guaranteed investors certain returns on their BTC Package purchases.   Specifically, JICHA promised that investors who purchased a €50 BTC Package would earn an average 1% daily "return of capital" on their investment for approximately 140 days, after which the BTC Package would close.   The closed BTC Packages could then be re-invested into new BTC Packages.   Investors were told that a BTC Package would remain open until 140% "return of capital" had been reached, and JICHA further assured investors that a package would never remain open for more than 190 days.

19.     As one example, in approximately August 2017, the defendant HORST JICHA appeared alongside Individual 1 in a USI-Tech promotional video that was filmed in the United States and was shared widely on social media ("Promotional Video 1").   In Promotional Video 1, Individual 1 explained that a BTC Package would remain open until 140% "return of capital" had been reached.   Individual 1 illustrated this by explaining that if a BTC Package reached 140% in 120 market days, it would close then, but if it took 150 market days for the BTC Package's "return on capital" to reach 140%, it would not close until 150 market days had passed.   JICHA interjected to correct Individual 1, falsely guaranteeing a range of investment returns, stating:

> I have to add something that is very important.   It's not like it could be open 500 days because our range will always be between 0.75 and 1.25.   This is based on our algorithm that is working in the back side or in the back office.   So the point is it's always between 0.75 and 1.25.

The screenshot below, captured from Promotional Video 1, depicted how investors could purportedly earn their "return of capital":



20. The defendant HORST JICHA encouraged investors to buy large numbers of BTC Packages and to make use of an automatic rebuy function to take advantage of the "compounding effect." In substance, JICHA told investors that if they bought enough packages to ensure that, at the end of a cycle, they had made enough money to automatically rebuy additional BTC Packages, this would provide for increasing investment returns. The screenshot below, captured from Promotional Video 1, depicted how the "compounding effect" worked in conjunction with "automatic re-buy":

| THE COMPOUNDING EFFECT:<br>EXAMPLE: 20 BTC-PACKAGES = 1000 €<br>AUTOMATIC RE-BUY OVER 280 WORKING DAYS | | |
|---|---|---|
| | # OF PACKAGES | VALUE OF BTC PACKAGES |
| DAY 1 | 20 | .5 BITCOIN |
| DAY 140 | 78 | 1.25 BITCOIN |
| DAY 280 | 126 | 2.5 BITCOIN |

This screenshot falsely suggested that investors could quintuple the value of their investment in 280 days provided they purchased 20 BTC Packages at the outset.   JICHA's promises of such growing returns were false and misleading.

21.     As another example, beginning in approximately 2017, a promotional video for USI-Tech geared towards a U.S. audience was posted on a popular crypto website. The video, which featured spoken words narrated over written slides, first stated that USI-Tech was available to anyone:

> This product is truly for EVERYBODY From Beginners to Veteran Cryptocurrency Experts.   The NOVICE can get involved and earn, while the most experienced TRADERS are jealous of the results USI-TECH's products provide.   What kind of results?   We are talking about an estimated 1% return on your capital DAILY. THINK ABOUT THAT.   What this means is you can multiply your Bitcoin up to 1% each market day.

It then further promised returns on investment and encouraged investors to reinvest their proceeds back into USI-Tech:

> Through USI-TECH's expert mining and trading efforts, they are able to provide you with about a 1% DAILY RETURN for 140 market days per package. That's a 40% net return in just about over 6 months!!!   Now you might be thinking, *this is too good to be true.*   Not only is it true but it actually GETS EVEN BETTER. If you take this 1% daily return and set your account to auto-rebuy, USI-TECH will automatically add an additional Bitcoin Package to your account every time you hit 50 EURO.

Finally, it referred to future developments and "recommended" that investors buy at least 100 BTC packages (costing €5,000) to ensure they would earn a new BTC package every day:

> While it's certainly unlike anything we've ever seen before, this is the TIP OF THE ICEBERG of what's to come.   THE FACT IS the returns on this product have been gained every day by people just like you consistently since April 2017. . . . We recommend a minimum of 100 BTC Packages so you can fully take advantage of the compounding effect by earning a BTC Package EVERY SINGLE DAY.

22.     The defendant HORST JICHA provided little transparency regarding how USI-Tech was making these purported guaranteed returns, other than broad references to cryptocurrency mining and algorithms.   The multilevel marketing nature of the scheme allowed JICHA to rely on investors themselves, who were eager to earn compensation referrals and excited about their purported exponentially growing returns, to market USI-Tech's investment products.   This also allowed JICHA to distance himself from both (1) false claims investors made to their downline about USI-Tech, and (2) the legal responsibility that came with marketing investment products in the United States.

23.     Investors who had purchased BTC Packages could access a private section of the Website behind a paywall, commonly referred to as the "back office," that purported to reflect an investor's total investment and their earned referrals, among other things.   Investors did not, however, have free and open access to withdraw their purported earnings.   USI-Tech imposed strict limitations on how much and how often an investor could transfer Bitcoin out of their USI-Tech back office and into their own digital wallets.

ii.     Misleading Claims Regarding USI-Tech's Legality

24.     The defendant HORST JICHA also promoted USI-Tech throughout 2017 at live, in-person events throughout the United States, including in Las Vegas, Nevada and Valley Forge, Pennsylvania.   Other USI-Tech events were held in Frisco, Texas and in New York City.

25.     In or about August 2017, USI-Tech held a "USA Kickoff" at a hotel and casino in Valley Forge, Pennsylvania, attended by USI-Tech investors and potential investors. The defendant HORST JICHA, Co-Conspirator 1 and Individual 1 all spoke at the event. Attendees were instructed not to film the event, although several did anyway.   During the event,

JICHA and Individual 1 assured the audience that USI-Tech was legal and was not a "scam" or a "Ponzi scheme." Individual 1, with JICHA standing by his side, told the audience, "Literally, we have been on the phone for hundreds of hours, spent I don't even know how much money, to make sure that everything is completely legal in the U.S." Individual 1 explained, "Horst and I went around the country and we searched out and found the very top SEC attorney . . . in the country. The very, very best at the very, very top." JICHA and Individual 1 then showed the audience excerpts of an opinion letter written by this "very top SEC attorney," purportedly verifying the legality of USI-Tech. While USI-Tech had obtained an opinion letter from an attorney, this presentation misled the audience regarding the scope, breadth and premise of the legal opinion and the relevant credentials of the attorney rendering the opinion, and provided false assurances about the legality of the company's operations.

      C.    <u>USI-Tech's Token Offering</u>

      26.    In or about November 2017, at a USI-Tech event in England attended by the defendant HORST JICHA, his co-conspirators and top distributors, JICHA announced that USI-Tech was launching a digital token and would soon thereafter issue a coin via an ICO.

      27.    Following that announcement, the defendant HORST JICHA appeared in a video broadcast to investors unable to attend the event in which JICHA was interviewed by Individual 1 about the token launch and ICO. JICHA explained that, like the BTC Packages before it, the tokens could be purchased in €50 packages of 100 tokens each, with increasing bonuses for larger package purchases, and commission for sales of tokens to one's downline. JICHA further explained that the money raised through token sales would be used to invest in technology, and that once one billion tokens were sold, USI-Tech would issue its coin and

convert the tokens into coins.   JICHA identified a website where investors could purchase the token, and encouraged investors to purchase it.

28.      Shortly afterwards, in a video posted on YouTube, CC-1 and CC-2 gave an interview in which they discussed the token launch and ICO.   CC-1 and CC-2 claimed they were transforming people's lives through USI-Tech.   They boasted about giving millions of people access to 40% returns on their investment based on unspecified Bitcoin mining technology.   They stated, in sum and substance, that they intended to raise two rounds of "five hundred million" each through USI-Tech's ICO, and that the money would be used to purchase Bitcoin mining technology.   CC-1 stated that USI-Tech was involved in 70 countries.

29.      As a result of the scheme described above, throughout the second half of 2017, USI-Tech began receiving substantial cryptocurrency inflows from investors, including those located in the Eastern District of New York, to a digital wallet controlled by the defendant HORST JICHA.

D.      Regulatory Responses

30.      On or about December 20, 2017, the Texas State Securities Board issued an Emergency Cease and Desist Order against USI-Tech and two individuals who promoted USI-Tech on the website Craigslist.org.   The order cited a number of securities registration and disclosure violations by USI-Tech, including the failure to disclose material facts, such as the identity of the company's principals, information about the purported Bitcoin mining contracts, and information about the company's assets and liabilities.   The order concluded by ordering USI-Tech to cease and desist from "engaging in fraud in connection with the offer for sale of securities."

31.     On or about February 16, 2018, the North Carolina Department of the Secretary of State, Securities Division, issued a Temporary Cease and Desist Order against USI-Tech.   The order stated that USI-Tech was not registered as a dealer or salesman of securities in North Carolina, and that its BTC Packages were effectively securities.   The order also stated that USI-Tech had failed to disclose material facts when offering BTC Packages in North Carolina, including "[i]nformation about the assets and liabilities of [USI-Tech] and any other information that indicates the means [USI-Tech] will provide investors with a guaranteed daily return, regardless of the value of Bitcoin," and "[i]nformation about the automated trading software developed by [USI-Tech], details of its trading records and historical performance, proof of its existence and the risk factors associate with its use."

32.     In addition to these regulatory actions against USI-Tech by U.S authorities, Canadian provincial securities regulators, including regulators in British Columbia, Manitoba, New Brunswick, Nova Scotia, Ontario and Saskatchewan, issued cease-trade orders or published warnings to investors with regards to USI-Tech.   This was followed by other regulatory action countries around the world.

E.     The Aftermath of the Regulatory Actions

33.     On or about January 5, 2018, following the Texas State Securities Board Emergency Cease and Desist Order, USI-Tech sent an "Extraordinary Termination of Distributor Agreement" letter to its investors, directing them to "immediately discontinue our business activities as well as our sales in the US and Canada."

34.     On or about January 8, 2018, USI-Tech sent an email to investors, blaming them for the company's shutdown.   The email claimed that many of its investors had committed misconduct by misrepresenting USI-Tech's products and company, and further stated

that "our advisors urged us to discontinue market access for our partner in the US and Canada to avoid more serious damage to the company." The email further claimed that "investigations have found many abused regarding double accounts and false accounts that have been used for unlawful payouts," and threatened to "prosecute these abuses to the fullest extent of the law." Finally, the email claimed that "we are barred from making any payments to prevent additional abuses."

35.     In contemporaneous online videos, the defendant HORST JICHA stated that it was his decision to "shut off" the U.S. and Canadian branches of USI-Tech in light of purported investor abuses. Around this time, USI-Tech stopped allowing U.S. investors to withdraw money from their accounts.

36.     On or about January 22, 2018, the defendant HORST JICHA, speaking on behalf of USI-Tech as CEO, withdrew the January 5, 2018 directive in a widely viewed online video. In this video, JICHA explained that distributors could resume marketing the USI-Tech investment packages in the U.S. and Canada. JICHA claimed, in sum and substance, that USI-Tech never did anything illegal in the United States.

37.     On or about January 24, 2018, the defendant HORST JICHA posted a letter in investors' back offices on the Website stating:

> [W]e are delighted to announce that we are re-entering the North America [USA and Canada] market with immediate effect. USI-Tech customers in these jurisdictions will now be able to buy BTC packages and continue to enjoy the benefits of our product.
>
> We are also working closely with our corporate lawyers to look at ways of resuming commission payments and continuing the referral commission for our partners in North America. In the meantime, new customers can be recruited in North America, but provisionally no commissions will be paid until a suitable and compliant solution can be found.

. . .

> By May/June 2018 USI-Tech will actively boast an impressive 600
> Petahash of Bitcoin mining.   We have already invested a great
> deal of capital in this market and will continue to do so.

By permitting the recruitment of new customers but "provisionally" prohibiting the payment of

commissions, JICHA ensured that money would continue to flow into, but not out of, USI-Tech

while investors awaited resumption of USI-Tech's operations.

38.    In or about March 2018, USI-Tech posted a letter in investors' back

offices on the Website stating that USI-Tech was going to repay its customers through what was

called "BTC 2.0 Packages."   BTC 2.0 Packages were purportedly a new USI-Tech investment

that would be used to repay the failed original BTC packages.   USI-Tech's letter explained that

income from the direct sale of a BTC 2.0 Package would be split as "35% to commissions for the

referring upline; 15% for company expenses; and 50% for repayment of . . . remaining 1.0

packages, outstanding commissions, and prior wallet balances" as of February 24, 2018.   USI-

Tech's letter guaranteed that "[a]ll packages purchased will be repaid up to 100% of original

purchase price," but also stated that "[a]ll BTC 1.0 Packs that have received 100% or more of

their initial BTC value are expired and are NOT considered for repayment."   In substance, USI-

Tech claimed that the BTC 2.0 packages would be used to repay the principal owed for the

original BTC Packages, but that investors would not be able to withdraw any of their purported

returns from the original BTC Packages.

F.    The Defendant Transferred Investor Money

39.    Despite these promises, U.S. investors were unable to withdraw their

money.   Many investors, including investors located in the Eastern District of New York,

repeatedly emailed USI-Tech in attempts to withdraw or transfer their money.   At first, they

were given repeated excuses about technological problems; eventually, USI-Tech stopped responding altogether.

40.     The defendant HORST JICHA ceased communicating with investors and distributors, and caused millions of dollars of investor money to be transferred.

41.     More specifically, in or about and between November 2017 and August 2018, the defendant HORST JICHA caused approximately 1,774 Bitcoin and 28,589.42 Ether (collectively worth approximately $94,000,000 as of the date of this Indictment) to be transferred from USI-Tech digital wallets to a cryptocurrency exchange deposit address controlled by JICHA.

COUNT ONE
(Securities Fraud Conspiracy)

42.     The allegations contained in paragraphs one through 41 are realleged and incorporated as if fully set forth in this paragraph.

43.     In or about and between January 2017 and August 2018, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant HORST JICHA, together with others, did knowingly and willfully conspire to use and employ one or more manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (i) employing one or more devices, schemes and artifices to defraud; (ii) making one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (iii) engaging in one or more acts, practices and courses of business which would and did operate as a fraud and deceit upon one or more investors and potential investors in USI-Tech, in connection with the purchase and

sale of BTC Packages, USI-Tech tokens and BTC 2.0 Packages, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails, contrary to Title 15, United States Code, Sections 78j(b) and 78ff.

44.     In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendant HORST JICHA, together with others, did commit and cause the commission of, among others, the following:

<u>OVERT ACTS</u>

(a)     In or about January 2017, JICHA recruited several United States citizens with demonstrated success in the multilevel marketing industry, including Individual 1, to begin promoting USI-Tech in the United States.

(b)     In or about July 2017, JICHA spoke at a live event in Las Vegas, Nevada in which he promoted USI-Tech.

(c)     In or about the early Fall of 2017, JICHA appeared in Promotional Video 1, in which he falsely promised USI-Tech investors and potential investors that USI-Tech's daily rate of return would "always be between 0.75 and 1.25."

(d)     In or about September 2017, JICHA spoke at a USA Kickoff in Valley Forge, Pennsylvania, where JICHA and Individual 1 assured the audience of investors and potential investors that USI-Tech was legal and was not a "scam" or a "Ponzi scheme."

(e)     In or about November 2017, at a USI-Tech event in England attended by top distributors, JICHA and his co-conspirators announced that USI-Tech was launching a token and would soon issue a coin via an ICO.

(f)     On or about November 6, 2017, JICHA began causing large denominations of cryptocurrency to be transferred from a USI-Tech digital wallet to a deposit account controlled by him.

(g)     On or about January 5, 2018, USI-Tech published an "Extraordinary Termination of Distributor Agreement" letter to its promoters, directing them to "immediately discontinue our business activities as well as our sales in the US and Canada."

(h)     In or about March 2018, USI-Tech published a letter on the Website stating that USI-Tech was going to repay its customers through BTC 2.0 Packages.

(i)     On or about August 28, 2018, JICHA caused cryptocurrency to be transferred from a USI-Tech digital wallet to a deposit address controlled by him.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

COUNT TWO
(Securities Fraud)

45.     The allegations contained in paragraphs one through 41 are realleged and incorporated as if fully set forth in this paragraph.

46.     In or about and between January 2017 and August 2018, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant HORST JICHA, together with others, did knowingly and willfully use and employ one or more manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing one or more devices, schemes and artifices to defraud; (b) making one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading; and (c) engaging in one or more acts, practices and

courses of business which would and did operate as a fraud and deceit upon one or more investors and potential investors in USI-Tech, in connection with the purchase and sale of BTC Packages, USI-Tech tokens and BTC 2.0 Packages, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNT THREE
### (Wire Fraud Conspiracy)

47.     The allegations contained in paragraphs one through 41 are realleged and incorporated as if fully set forth in this paragraph.

48.     In or about and between January 2017 and August 2018, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant HORST JICHA, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud one or more investors and potential investors in USI-Tech, and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT FOUR
### (Money Laundering Conspiracy)

49.     The allegations contained in paragraphs one through 41 are realleged and incorporated as if fully set forth in this paragraph.

50.     In or about and between January 2017 and August 2018, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant HORST JICHA, together with others, did knowingly and intentionally conspire to:

(a)     transport, transmit and transfer monetary instruments and funds from a place in the United States to and through a place outside of the United States, with the intent to promote the carrying on of one or more specified unlawful activities, to wit: securities fraud conspiracy and securities fraud, in violation of Title 18, United States Code, Section 1956(a)(2)(A);

(b)     transport, transmit and transfer monetary instruments and funds from a place in the United States to and through a place outside of the United States, knowing that the monetary instruments and funds involved in such transportation, transmission and transfer were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of one or more specified unlawful activities, to wit: securities fraud conspiracy and securities fraud, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i); and

(c)     engage in monetary transactions by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from one or more specified unlawful

activities, to wit: securities fraud conspiracy and securities fraud, in violation of Title 18, United States Code, Section 1957.

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNTS ONE THROUGH THREE

51.     The United States hereby gives notice to the defendant that, upon his conviction of any of the offenses charged in Counts One through Three, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

52.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

       (a)     cannot be located upon the exercise of due diligence;

       (b)     has been transferred or sold to, or deposited with, a third party;

       (c)     has been placed beyond the jurisdiction of the court;

       (d)     has been substantially diminished in value; or

       (e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNT FOUR

53.     The United States hereby gives notice to the defendant that, upon his conviction of the offense charged in Count Four, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

54.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any

other property of the defendant up to the value of the forfeitable property described in this

forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United

States Code, Section 853(p))


A TRUE BILL

_____
FOREPERSON


*By Carolyn Pokorny, Assistant U.S. Attorney*
_____
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F.#: 2017R02234
FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

## EASTERN *District of* NEW YORK

## CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

## HORST JICHA,

Defendant.

# INDICTMENT

T. 15, U.S.C., §§ 78j(b) and 78ff; T. 18, U.S.C., §§ 371, 981(a)(1)(C),
982(a)(1), 982(b)(1), 1349, 1956(h), 2 and 3551 et seq.; T. 21, U.S.C.,
§ 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_____ *Foreperson*

*Filed in open court this* _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ *day,*

*of* _ _ _ _ _ _ _ _ _ _ _ _ *A.D. 20* _ _ _ _ _

_____ *Clerk*

***Kaitlin Farrell and Genny Ngai, Assistant U.S. Attorneys (718) 254-7000***